UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| REBECCA D. JAGGARS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.   3:15-cv-01875-HNJ |
| | ) | |
| FLORENCE NURSING AND | ) | |
| REHABILITATION CENTER, LLC | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION AND DISMISSAL ORDER

This civil action proceeds before the court on Defendant's Motion for Summary Judgment. (Doc. 18). In its Motion, Defendant argues that because Plaintiff has no evidence to support her claims of race, age, and disability discrimination and retaliation, and there exist no genuine issues of material fact, Defendants are entitled to summary judgment. Based upon the following discussion, the court **GRANTS** the motion.

### STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. Rule 56(a). Defendant, as the party seeking summary judgment, bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S.317, 323 (1986)).

A non-moving party demonstrates a genuine issue of material fact by producing evidence by which a reasonable fact-finder could return a verdict in its favor. *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (citation omitted). In reviewing whether the non-moving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations; one should credit the non-movant's evidence and draw all justifiable inferences in its favor. *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998-99 (11th Cir. 1992) (internal citations and quotations omitted). However, speculation or conjecture cannot create genuine issues of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). A "mere scintilla of evidence" in support of the non-moving party also cannot overcome a motion for summary judgment. *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004) (citation omitted).

### BACKGROUND

The undersigned sets forth the following facts for the summary judgment determination. On or about April 26, 2013, Defendant Florence Nursing and Rehabilitation Center, LLC (FNRC) employed Plaintiff Rebecca D. Jaggars as a Licensed Practical Nurse (LPN) at its location in Lauderdale County, Alabama. Plaintiff is Caucasian and Defendant hired her approximately seven months prior to her fortieth

birthday. During Plaintiff's employment, Jennice Crowell served as the facility's Executive Director and Linda Graves served as the facility's Director of Nursing Services. Plaintiff's primary job duties consisted of administering medication to FNRC residents in a manner consistent with physicians' orders and completing paperwork pertaining to the medication dispensed. As an LPN, Plaintiff reported directly to Unit Manager Peggy Darby and Ms. Graves.

FNRC required all LPNs, including Plaintiff, to comply with specific paperwork requirements. When administering medication, FNRC nurses relied on the Medical Administration Records (MARs), which served as the legal record of medication for each resident. Each resident has a MAR that reflects all medications prescribed to the resident and the times that the resident receives each medication. Federal regulations require nurses to sign the MAR after administering the medication, and each signature communicates to the nurses in the facility and other reviewing entities that the resident received medication consistent with a physician's orders. During her employment, FNRC counseled Plaintiff on at least one occasion for poor documentation, and Plaintiff's supervisor noted in her performance evaluation that her MAR documentation frequently had "holes" where she neglected to indicate when a patient received his or her medication.

On August 19, 2014, FNRC sent resident RT[1] to Lake Point Behavioral Health for evaluation and treatment. Under standard procedure, FNRC sent RT's medical records to Lake Point Behavioral Health. That evening, a physician from Lake Point contacted Ms. Crowell to inform her of an inconsistency that he discovered while comparing RT's FNRC medical records to the standard pharmacology screen performed on RT upon his admission to Lake Point. Specifically, the physician stated that RT's records from FNRC indicated that RT received Norco (a narcotic pain medication) and Ativan (an anxiety medication) on the day of, and prior to, RT's admission at Lake Point, but RT's Lake Point pharmacology screen produced a negative result for those medications. FNRC expressed concern that these differing results indicated potential medication diversion, and it commenced an investigation that same night.

Plaintiff, Krystle Duncan, and Jennifer Ward were the three nurses who most recently administered medications to RT during the period in question. Both Duncan and Ward are Caucasian and under 40 years old. RT's physician prescribed both drugs to RT "PRN", meaning that RT only received these drugs when needed. For PRN narcotics, such as the pain medication Plaintiff allegedly administered to RT on the evening of August 18, 2014, the nurses must also document this administration as follows: (1) on a narcotics sheet, confirming that the nurse took the medication from

---

[1] For privacy reasons, the court will only refer to Defendant's residents by their initials.

the medicine cart and administered it to the resident; (2) on a PRN sheet, indicating that the resident received a PRN medication, and (3) on the resident's MAR. In addition, the nurse must document other information about the resident, such as the resident's pain level that justifies the need for a PRN narcotic.

As part of the investigation, FNRC drug tested Plaintiff, Duncan, and Ward. Defendant alleges that Plaintiff's and Duncan's initial drug screens were positive, while Ward's initial drug screen was negative. However, Plaintiff disputes this allegation and argues that Defendant informed her that Plaintiff's initial urine screen was negative. (Pl. Dep. at 127-28, ll. 19-23, 1-3). Because of the allegedly positive drug screens, and the role in administering RT's medication more recently than Ward, FNRC suspended Plaintiff and Duncan pending investigation. FNRC sent Plaintiff's and Duncan's drug screens to a lab for confirmation; Plaintiff's results were negative, while Duncan's results were positive.

The investigation also involved a thorough review of several residents' medical records, including their narcotics sheets, PRN sheets, and MARs. Although the investigation did not reveal any missing medication, Ms. Crowell and Ms. Graves discovered that both Plaintiff and Duncan committed multiple serious documentation errors. For example, FNRC prescribed Norco, a PRN ("as needed") narcotic, to Resident GJ. In May 2014, Plaintiff signed the controlled drug record for Resident GJ nineteen (19) times, which indicated that she administered Norco to GJ 19 times. However, she only signed GJ's MAR once in May 2014, and she only documented GJ's

pain for three (3) days that month. Furthermore, Plaintiff made similar documentation errors in the medical records of two other residents. Plaintiff does not dispute these documentation errors, and she understands the nursing standard of properly documenting resident care, including medication. Crowell and Graves allege that, because of Plaintiff's multiple documentation errors, they terminated Plaintiff's employment. Crowell and Graves also terminated Duncan's employment, as she had also committed documentation errors.

On November 6, 2014, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Compl., Ex. A). In her Charge, Plaintiff alleged discrimination based on race, age, and alleged disability, as well as retaliation. (*Id.*) The EEOC issued a Notice of Right to Sue on July 1, 2015. (Compl., Ex. B). On September 24, 2015, Plaintiff filed suit in the Circuit Court of Lauderdale County, Alabama, alleging claims of discrimination based on race, age, and disability, and a claim of retaliation. (Compl.) FNRC removed the action to this Court on October 26, 2015. (Doc. 1).

**ANALYSIS**

**Plaintiff's Race Discrimination Claim**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. §2000e-2(a)(1). Under Title VII, the plaintiff possesses the burden of establishing a *prima facie* case of employment

discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

A plaintiff may sustain this burden in any one of three ways: (1) by presenting direct evidence of discriminatory intent; (2) by presenting circumstantial evidence of discriminatory intent through the *McDonnell-Douglas* test; or (3) by demonstrating through statistics a pattern of discrimination. *Rioux v. City of Atlanta, Ga.*, 520 F.3d 1269, 1274 (11th Cir. 2008).

Plaintiff offers circumstantial evidence of race discrimination; therefore, the court evaluates her discrimination claim through the burden shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this scheme, the plaintiff must first establish a *prima facie* case. Once the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reasons for its employment decision. *Rioux* at 1275. If the employer carries its burden of production, the plaintiff must show that the reason the employer offered is pretext for discrimination. *Id.*

To state a *prima facie* case for race discrimination, Plaintiff must show that she (1) was a member of a protected class; (2) the Defendant subjected her to an adverse employment action; (3) her employer treated similarly situated employees more favorably than she; and (4) she was qualified to do the job. *Ashmore v. Sec., Dept. of Transp.*, 503 Fed. Appx. 683, 687 (11th Cir. 2013)(citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997)). Plaintiff argues in her complaint that Defendant discriminated against her based on her race. However, Defendant avers that Plaintiff abandoned this claim by

failing to address it in her response to Defendant's Motion for Summary Judgment.

The Eleventh Circuit has held that the failure of a party to respond or oppose a pending motion may constitute an abandonment of the claims at issue in that motion. *See,* e.g., *Coalition for the Abolition on Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000)(finding that a party's failure to brief and argue an issue before the district court renders the claims abandoned); *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (concluding that a plaintiff's failure to respond to claims in a defendant's motion to dismiss resulted in dismissal of those claims as abandoned). As portrayed in Plaintiff's response, she failed to respond to the Defendant's arguments against her race discrimination claim; thus, she neglected to address the merits of Defendant's contentions regarding that claim. *See*, e.g., *Edmondson v. Bd. of Trustees of Univ. of Ala.*, 258 Fed. Appx. 763, 765 (11th Cir. 2008)(finding that "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned")(citing *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)). Because Plaintiff failed to defend her race discrimination claim against Defendant's arguments, Defendant is entitled to summary judgment on Plaintiff's race discrimination claims.

However, even assuming that Plaintiff sufficiently argued her race discrimination claim, Defendant is still entitled to summary judgment as to this claim. Defendant concedes that Plaintiff belongs to a protected class and that it terminated her employment. Nevertheless, Plaintiff fails to identify a similarly situated, non-Caucasian comparator who was treated more favorably than she. To sustain a valid comparison,

the plaintiff must demonstrate that she and the comparators are "similarly situated *in all relevant respects.*" *Stone & Webster Const., Inc. v. U.S. Dept. of Labor*, 684 F.3d 1127, 1134 (11th Cir. 2012)(citing *Rioux*, 520 F.3d at 1280). To establish a comparator in the disciplinary context, the quantity and quality of the comparator's misconduct must be "nearly identical" to the plaintiff's misconduct. *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006). A plaintiff may, however, withstand summary judgment even in the absence of an adequate comparator if she presents "a convincing mosaic of circumstantial evidence" that allows a reasonable jury "to infer intentional discrimination by the decision maker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

Plaintiff identified an alleged comparator for her racial discrimination claim: LPN Shara Cole. Cole is African-American and under 40 years old. For Cole to be a proper comparator, Plaintiff must also show that Defendant treated Cole differently from Plaintiff because of Cole's race, and that Cole engaged in the same misconduct Plaintiff committed. Plaintiff did not rebut Defendant's undisputed facts that Cole did not commit any severe documentation errors regarding PRN narcotics or any other medications. Furthermore, Plaintiff produces no other evidence that allows the court to infer discrimination by Defendant. Therefore, Plaintiff's race discrimination claim fails.

Based on the foregoing discussion, the court GRANTS summary judgment on Plaintiff's race discrimination claim.

**Plaintiff's Age Discrimination Claim**

The Age Discrimination in Employment Act ("ADEA") makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. §623(a)(1). The ADEA's requirement that an employer took adverse action "because of" age requires that age must be "the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). To establish a disparate-treatment claim under the ADEA's plain language, a plaintiff must prove that age served as the "but-for" cause of the employer's adverse decision. *Id.* The burden-shifting standards that apply to Title VII claims also apply to cases arising under the ADEA. *See*, e.g., *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 756 (1979)("[T]he ADEA and Title VII share a common purpose, the elimination of discrimination in the work place . . ."); *Edwards v. Shalala*, 64 F.3d 601, 606 (11th Cir. 1995). A plaintiff may establish age discrimination through either direct or circumstantial evidence. *Sims v. MVM, Inc.*, 704 F.3d 1327 (11th Cir. 2013).

Plaintiff alleges that both circumstantial and direct evidence support her age discrimination claim. The Eleventh Circuit adopted a variation of the test that the Supreme Court articulated in *McDonnell Douglas* for circumstantial evidence cases arising under the ADEA. *See Washington v. United Parcel Serv., Inc.*, 567 Fed. Appx. 749 (11th Cir. 2014). As for direct evidence, the Eleventh Circuit has held that:

> This Court defines direct evidence of discrimination as evidence which reflects a discriminatory or retaliatory attitude correlating to the discrimination or retaliation

complained of by the employee. Direct evidence is evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption. As our precedent illustrates, only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor constitute direct evidence of discrimination. If the alleged statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence.

*Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1086 (11th Cir. 2004) (citations and internal quotation marks omitted). "[R]emarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Jackson v. Dunn Const. Co., Inc.*, 927 F. Supp. 2d 1229, 1237 & n.6 (citing *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998)).

Plaintiff argues in her complaint that Defendant discriminated against her based on her age. However, Defendant avers that Plaintiff, as with the race discrimination claim, also abandoned her age discrimination claim by failing to address it in her response to Defendant's Motion for Summary Judgment. Based on Eleventh Circuit precedent regarding abandoned claims, the court finds that Plaintiff's failure to respond to Defendant's contentions regarding her age discrimination claim renders the claim abandoned. However, even if the court assumes that Plaintiff sufficiently argued her age discrimination claim, Defendant is still entitled to summary judgment.

Plaintiff cites a statement made by Ms. Darby as direct evidence of age discrimination. Ms. Darby allegedly stated that Defendant "hired young nurses . . . straight out of nursing school and they could train them the way they wanted to train

them." (Pl. Dep. at 190-91, ll. 22-23, 1-3). However, this statement does not constitute direct evidence of age discrimination because (1) Ms. Darby was not a decision maker regarding Plaintiff's termination, and (2) this comment does not relate to Plaintiff's termination. Furthermore, Plaintiff states in her deposition that Ms. Darby made that remark to her during a conversation they were having, and Ms. Darby also said in that conversation that "fresh new nurses" are easier to train and mold towards one's way of thinking. (Pl. Dep. at 193, ll. 3-11). Comments such as Ms. Darby's are "much too innocuous to transform routine managerial decisions into something more invidious." *See Dexter v. Amedisys Home Health, Inc.*, 965 F. Supp. 2d 1280, 1291 (N.D. Ala. 2013) (discarding remarks by non-decision maker and finding the comment that employer needed "new blood" to be "profoundly ambiguous"). Furthermore, Plaintiff fails to show that Ms. Darby directed this comment at her. Therefore, this statement does not constitute direct evidence of age discrimination.

In addition, Plaintiff identified LPN Jennifer Ward as an alleged comparator for purposes of age discrimination. Ward is Caucasian and less than 40 years old. For Ward to be a proper comparator, Plaintiff must show that Defendant treated Ward differently from Plaintiff because of Ward's age, and that Ward engaged in the same misconduct Plaintiff committed. However, Ward did not commit the same severe documentation errors underlying Plaintiff's termination. Absent any additional argument, Plaintiff's age did not result in any alleged favorable treatment Ward received.

Based on the foregoing discussion, the court GRANTS Defendant summary

judgment on Plaintiff's age discrimination claim.

**Plaintiff's Disability Discrimination Claim**

The Americans with Disabilities Act (ADA) forbids covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees." 42 U.S.C. §12112(a) (2000). A modified *McDonnell Douglas* burden-shifting framework applies to ADA claims. *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). Therefore, Plaintiff has the burden of proving a *prima facie* case of disability discrimination, which requires a demonstration that she: (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability. 42 U.S.C. §§12112(a); *see Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004).

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2). The Eleventh Circuit has held that work classifies as a major life activity. *See, e.g.*, *Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1216 & n. 2 (11th Cir. 2004).

Plaintiff must demonstrate that her impairment is so substantially limiting that she "is regarded as precluded from more than a particular job." *Murphy v. United Parcel*

*Serv., Inc.*, 527 U.S. 516, 523 (1999).[2] Specifically, Plaintiff must demonstrate that she was regarded as unable to perform "either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." *Carruthers*, 357 F.3d at 1213 (adopting 29 C.F.R. §1620.2(j)(3)(i)). The ADA, as amended by the Americans with Disabilities Act Amendments Act of 2008 (ADAAA), further explains that "[t]he determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures," including medication. 42 U.S.C. §12102(4)(E). However, the burden remains on Plaintiff to prove that she has a disability. *See Lloyd v. Hous. Auth. Of the City of Montgomery, AL*, No. 2:10-cv-1103-MEF, 2012 WL 1466561, *20 (M.D.Ala. Apr. 27, 2012)(citing *Crawford v. Carroll*, 529 F.3d 961, 975-76 (11th Cir. 2008)).

Plaintiff alleges that her disability stems from her back surgery in 2008. However, Plaintiff stated on her post-offer medical questionnaire that she did not have any back problems. Plaintiff also indicated that she did not have a disability that prevented her from working. Her only comment regarding her back specified that she "could do anything any other nurse did within reason as long as it wasn't something that would put [her] at risk for another back injury." (Pl. Dep. at 188, ll. 15-18). Plaintiff also stated in

---

[2] An impairment is "substantially limiting" when the individual is: (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. 29 C.F.R. §1630.20(j)(1).

her deposition that she possessed the same abilities as the other employees, even without accommodation. (Pl. Dep. at 188, ll. 14-23). Therefore, this evidence indicates Plaintiff does not suffer a disability.

To be sure, Plaintiff remarked that she could not engage in "extreme heavy lifting without assistance" because of her back. (Pl. Dep. at 188, ll. 2-3). However, Plaintiff must not only show that she suffers from a physical impairment; she must also prove that this impairment *substantially limits* her ability to work. *See* 42 U.S.C. §12102(2). Plaintiff's claim fails upon applying this provision. Plaintiff admits that the facility required its nurses to use a mechanical lift, or the efforts of at least two employees, to move patients in and out of bed. Furthermore, Plaintiff did not have any problems operating the lifts. Plaintiff fails to show that her back pain substantially limited her ability to perform these duties, and therefore she cannot prove that she is disabled.

Furthermore, Plaintiff cannot prove that Defendant discriminated against her on the basis of her disability via direct evidence. To revisit, the Eleventh Circuit defines direct evidence in the employment context as "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Kilpatrick v. Tyson Foods, Inc.*, 268 Fed. Appx. 860, 861-62 (11th Cir. 2008)(internal citations and quotations omitted). Plaintiff recounts an event undergirding her belief that her alleged disability played a role in her adverse employment action: Plaintiff asked her supervisor, Ms. Darby, for assistance in lifting a resident because a mechanical lift was not available for use. Ms. Darby refused to assist her; rather, Darby remarked that if Plaintiff could not

do her job, then Plaintiff should obtain a desk job. Another employee walked up at the time of this incident and assisted Plaintiff with lifting the resident.

Ms. Darby's comment towards Plaintiff does not constitute direct evidence of disability discrimination. Ms. Darby's remark does not facially reveal intent to discriminate on the basis of disability, nor does it implicitly suggest any discriminatory animus on account of any such alleged disability.

Accordingly, the court GRANTS summary judgment on Plaintiff's disability discrimination claim.

**Plaintiff's Retaliation Claim**

Title VII's anti-retaliation provision provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. §2000e-3(a) (1982). To press a retaliation claim, a plaintiff must show that (1) she engaged in a statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relationship between the two events. *See Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002); *Cowan v. Jackson Hosp. & Clinic, Inc.*, 572 F. Supp. 2d 1286, 1289 (M.D. Ala. 2008). To sustain this burden with circumstantial evidence, a plaintiff must rely on a burden-shifting approach akin to the *McDonnell Douglas* framework. *See Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295,

1310-11 (11th Cir. 2016)(citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)).

If the plaintiff makes out a *prima facie* case of retaliation, the burden shifts to the

employer to articulate a legitimate reason for the adverse employment action. *Sullivan v.*

*Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999). If the employer proffers

a legitimate reason, the burden shifts back to the employee to show that the legitimate

reason was pretext for prohibited retaliatory conduct. *Bryant v. Jones*, 575 F.3d 1281,

1308 (11th Cir. 2009). The plaintiff can demonstrate pretext by exposing "weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions" in the defendant's

reasoning. *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir.

2007).

Plaintiff alleges that Defendant retaliated against her because of complaints she

lodged regarding Ms. Darby's alleged discrimination against Plaintiff's race and

disability. The court assesses ADA retaliation claims under the same framework

employed for retaliation claims arising under Title VII. *Parker v. Economic Opportunity for*

*Savannah-Chatham County Area, Inc.*, 587 Fed. Appx. 631, 633 (11th Cir. 2014)(citing

*Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1287 (11th Cir. 1997)). A

review of the evidence demonstrates that although Plaintiff met the second element

here, she failed to establish the first and third elements.

*Plaintiff's Complaints to Ms. Crowell are not Statutorily Protected Conduct*

"Title VII's protections against retaliation do not create an aegis or shield

guarding against any and all retaliatory wrongs." *Cooley v. Great S. Wood Preserving, Inc.*,

No. 2:03-cv-681-A, 2004 WL 5570664, at *9 (M.D.Ala. 2004), *aff'd sub nom. Cooley v. Great S. Wood Preserving, Inc.*, 138 Fed. Appx. 149 (11th Cir. 2005). Therefore, to satisfy the first prong of the *prima facie* case, an employee who claims retaliation for making a complaint of discrimination must have had a good faith, objectively reasonable belief that such discrimination was unlawful under Title VII. *Cooley*, 2004 WL 5570664 at *9 (citing *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)). Title VII prevents discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2. The ADA forbids covered employers from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees." 42 U.S.C. §12112(a) (2000). The ADA also prohibits retaliation against an employee who has "opposed any act or practice made unlawful by" the ADA ("the opposition clause") or "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the ADA ("the participation clause"). 42 U.S.C. §12203(a)(contains identical language to Title VII's anti-retaliation provision).

Plaintiff refers to two alleged complaints to Executive Director Jennice Crowell. (Pl. Dep. at 94, ll. 22-23; p. 95, l. 1). The first complaint involved Plaintiff's concerns that Ms. Darby treated her and Ms. Cole, a black coworker, differently regarding work assignments. Plaintiff alleges that she believed that these differences in duty assignments were racially motivated, yet Plaintiff also admits that she "can't say for certain if [she] did or didn't" inform Ms. Crowell that she believed Ms. Darby treated

her and Ms. Cole differently on the basis of race. (Pl. Dep. at 95, ll. 2-21).

The second complaint involved Plaintiff's concerns regarding Ms. Darby's comment to her after Plaintiff requested assistance with lifting a patient, where Ms. Darby allegedly stated that if Plaintiff could not lift the patient, then Plaintiff should get a desk job. (Pl. Dep. at 94, ll. 22-23; p. 95 at l. 1).

Neither of these complaints qualifies as a protected activity. *See Coutu v. Martin Cnty. Bd. Of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1993)("Unfair treatment, absent discrimination based on race, sex, or national origin, is *not* an unlawful employment practice under Title VII."); *see also Romig v. Nextek, Inc.*, No. 5:15-cv-0158-CLS, 2016 U.S. Dist. LEXIS 84292, at *29 (N.D. Ala. June 29, 2016)("Plaintiff [] made informal complaints to her supervisors about work assignments and her co-workers' behavior, but she never made a complaint that she was being treated differently *because of her race*, or *because of her association with black employees* . . . Accordingly, those complaints cannot serve as the basis for a retaliation claim.")(emphasis in original). Additionally, to establish retaliation under the opposition clause, the plaintiff must place the employer on notice that she is complaining of unlawful practices. *Reynolds v. Golden Corral Corp.*, 106 F. Supp. 2d 1243, 1253-54 (M.D. Ala. 1999). Plaintiff's complaints did not place Defendant on notice that she was complaining of protected activity, and she also failed to demonstrate that her beliefs Ms. Darby was engaging in unlawful employment practices were reasonable. Because Plaintiff did not lodge a complaint that she was being discriminated against for any reason rendered unlawful by Title VII or the ADA, she cannot establish

the first element of her prima facie case of retaliation.

*Plaintiff Failed to Establish a Causal Relationship Between Her Complaints and Her Termination*

Even if Plaintiff could establish the first element by showing that she engaged in statutorily protected conduct, and even though her termination constitutes an adverse employment action for purposes of the second element, her claim still fails because she cannot satisfy the third element. Plaintiff cannot establish a causal connection between her alleged protected activity and her firing.

In *University of Texas Southwestern Medical Center v. Nassar*, the Supreme Court held that Plaintiffs must establish Title VII retaliation claims according to traditional principles of but-for causation, not Title VII's lessened causation test applicable to status-based discrimination. 133 S. Ct. 2517, 2533 (2013). This change requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer. The plaintiff bears the burden of persuasion "to proffer evidence sufficient to permit a reasonable fact finder to conclude that the retaliatory animus was the 'but-for' cause" of the adverse action. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013).

Close temporal proximity between the protected activity and the adverse action "may be sufficient to show that the two were not wholly unrelated." *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1119 (11th Cir. 2001)(citation omitted), *overruled in part on other grounds*, *Crawford v. Carroll*, 529 F.3d 961 (11th Cir. 2008). However, a lapse in time of

several months, in the absence of other evidence tending to show causation, is insufficient. *See Hidgon v. Jackson,* 393 F.3d 1211, 1220 (11th Cir. 2004). Plaintiff asserts that her two interactions with Ms. Darby and her conversations with Ms. Crowell about these interactions occurred around the beginning of April 2014. (Pl. Dep. at 104, ll. 18-21). However, Defendant did not terminate Plaintiff's employment until August 27, 2014, after an investigation revealed her severe documentation errors.

This lapse in time, standing alone, extinguishes Plaintiff's claims in light of the Supreme Court's decision in *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001). This lengthy time lapse between the alleged protected conduct and the adverse action "is too great to constitute circumstantial evidence of causation." *See, e.g., Breeden*, 532 U.S. at 273-74 (citing affirmatively several court of appeals decisions for the proposition that a three to four month gap is insufficient to establish the causal relation prong in a retaliation case); *see also Drago v. Jenne*, 453 U.S. 1301, 1308 (11th Cir. 2006)(holding that three months between protected activity and an adverse employment action was insufficient to establish a causal connection); *Higdon v. Jackson*, 393 F.3d 1211, 1221 (11th Cir. 2004)(same).

In addition to the substantial time lapse here, it is also undisputed that, in August 2014, Defendant discovered Plaintiff's numerous documentation errors from May through August 2014. Upon discovering that resident RT's medication records were not properly filled out, Defendant conducted an investigation of the nurses who had most recently treated RT—including Plaintiff. It was during this investigation that Defendant

discovered Plaintiff's documentation errors. These facts operate as a break in the chain of causal connection and remove any inference that her termination represented retaliation for her complaints.

*Defendant's Legitimate Non-Retaliatory Reason for Plaintiff's Termination*

To establish retaliation, the plaintiff must meet the ultimate burden of showing that the reasons given for an adverse action served as pretext for retaliation, and that retaliation operated as the but-for cause of the adverse action. *Univ. of Texas Sw. Med. Ctr.*, 133 S. Ct. 2517 (2013). Even if Plaintiff established a *prima facie* case of retaliation—and in this case, Plaintiff has not—Defendant has articulated a legitimate, non-retaliatory reason for Plaintiff's termination, which Plaintiff has failed to establish was pretextual.

Plaintiff committed multiple documentation errors, and these errors violated facility policy and the Alabama Nurse Practices Act. *See Usry v. Liberty Reg'l Med. Ctr., Inc.*, 560 Fed. Appx. 883, 888 (11th Cir. 2014)(violation of company policy was legitimate, non-discriminatory reason); *Dexter v. Amedisys Home Health, Inc.*, 965 F. Supp. 2d 1280, 1296 (N.D. Ala. 2013)(finding that employer articulated legitimate, non-discriminatory, non-retaliatory reasons for Plaintiff's employment termination where Plaintiff violated policies and procedures, including "attendance issues and failure to document properly patient care and timely submit paperwork."). Plaintiff has not disputed that she made the errors at issue. Rather, she argues that other coworkers allegedly committed the same errors and were not discharged. However, Plaintiff does not provide any evidence

22

to support this claim.

In evaluating pretext, courts determine "whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable factfinder to conclude that the employee's proffered legitimate reasons were not what actually motivated its conduct." *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008) (citation and internal quotation marks omitted). As long as the proffered reason is one that might motivate a reasonable employer, "an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000)(en banc). A proffered reason does not serve as pretext for discrimination unless the plaintiff shows that (1) the reason is false, and (2) discrimination is the real reason. *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006)(internal quotation and citation omitted).

Plaintiff provides no evidence indicating that Defendant's articulated reason for terminating Plaintiff's employment was a pretext for discrimination. Furthermore, Plaintiff's own admission of documentation errors and the Alabama Board of Nursing's independent investigation support Defendant's stated reason for terminating Plaintiff's employment. Therefore, the Court GRANTS summary judgment for Defendant on Plaintiff's retaliation claim.

For the foregoing reasons, the court GRANTS Defendant's Motion for Summary Judgement. The court will issue a final judgment in a separate order.

**DONE** and **ORDERED** this 7th day of December, 2017.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE